# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

CURUMULATHU JACOB,

      Petitioner,

v.                                      Civil Action No. 3:10cv253

GENE M. JOHNSON,

      Respondent.

## MEMORANDUM OPINION

Petitioner Curumulathu Jacob, a Virginia inmate proceeding *pro se*, brings this petition for a writ of habeas corpus ("§ 2254 Petition") pursuant to 28 U.S.C. § 2254.[1] Jacob challenges his convictions for eight counts of rape and two counts of indecent liberties. Respondent filed a Motion to Dismiss (Docket No. 9) and Rule 5 Answer (Docket No. 8), providing Jacob with appropriate *Roseboro*[2] notice (Docket No. 11). Jacob has responded to the motion. (Docket No. 15.) The matter is ripe for adjudication. Jurisdiction exists under 28 U.S.C. §§ 636(c) and 2254. For the reasons that follow, the Court will GRANT Respondent's Motion to Dismiss. (Docket No. 9.)

---

[1] 28 U.S.C. § 2254(a) states in relevant part:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

# I. Factual and Procedural History

## A. Circuit Court Proceedings

On August 14, 2006, the grand jury in Loudoun County indicted Jacob, charging him with three counts of rape and two counts of indecent liberties during the period from January 1, 2006 to May 25, 2006. On September 11, 2006, the grand jury returned a second indictment against Jacob, charging him with five counts of rape during the period from January 1, 2004 to May 25, 2004. On November 20, 2006, after a six-day jury trial in the Circuit Court of Loudoun County ("Circuit Court"), the jury found Jacob guilty of eight counts of rape and two counts of indecent liberties and recommended a sentence of forty-four years of imprisonment on each count of rape and five years of imprisonment on each count of indecent liberties. On April 5, 2007, the Circuit Court sentenced Jacob to forty-four years of imprisonment on each count of rape and five years of imprisonment on each count of indecent liberties, ordering that all sentences imposed shall run concurrently. The next day, the Circuit Court entered the judgment.

## B. Direct Appeal

Jacob pursued a direct appeal of his conviction, raising the following grounds for relief:

Ground 1:   The trial court erred in denying Jacob's pretrial Motion for Bill of Particulars as the Bill of Particulars was necessary to protect Jacob's rights to present a full and fair defense, to call for witnesses on his behalf, and to protect his rights to avoid double jeopardy.

Ground 2:   The evidence was insufficient, as a matter of law, to sustain Jacob's multiple convictions of rape.[3]

The Virginia Court of Appeals denied Jacob's appeal, finding that the Circuit Court did not abuse its discretion in denying Jacob's Motion for Bill of Particulars and finding that the evidence

---

[3] Jacob also raised a third ground for relief which is not raised in his § 2254 Petition and lacks relevance here.

adduced at trial was sufficient to prove Jacob's guilt beyond a reasonable doubt. *Jacob v. Commonwealth*, No. 0951-07-4 (Va. Ct. App. Oct. 30, 2007). Jacob pursued a second-tier appeal to the Supreme Court of Virginia, again raising the same claims. The Supreme Court of Virginia refused Jacob's petition for appeal on July 8, 2008 and refused his petition for rehearing on September 18, 2008. *Jacob v. Commonwealth*, No. 080341 (Va. Sept. 18, 2008); *Jacob v. Commonwealth*, No. 080341 (Va. July 8, 2008).

## C.      Post-Conviction Relief in State Court

On April 21, 2009, Jacob filed a Motion for Scientific Analysis of Previously Untested Scientific Evidence in the Circuit Court, requesting that DNA evidence be collected from his wife and eldest son and compared to DNA profiles developed from the Commonwealth of Virginia's ("Commonwealth") exhibits. On December 1, 2009, the Circuit Court denied Jacob's motion, finding that the scientific testing sought was available and known at the time Jacob's conviction became final.

On August 20, 2009, Jacob filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, raising the following grounds for relief:

Ground 1:    Petitioner was denied his Sixth Amendment[4] right to effective assistance of counsel when defense counsel failed to investigate and present exculpatory evidence. Specifically, Petitioner alleges ineffective assistance of counsel in defense counsel's failure to:

a.  obtain DNA samples from Petitioner's wife and eldest son, have those samples tested and the resulting DNA profiles compared to the DNA profiles developed from the stains on the items in evidence, and present that evidence at trial; and,

---

[4] The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

> b. obtain independent expert witness testimony and impeach the Virginia Department of Forensic Science technician's testimony that the victim could not be eliminated as a contributor to the non-sperm stain on the bedspread.

On February 8, 2010, the Supreme Court of Virginia denied Jacob's state habeas petition, finding his ineffective assistance of counsel claims to be without merit. *Jacob v. Dir. of the Dep't of Corr.*, No. 373328 (Va. Feb. 8, 2010).

### D.     28 U.S.C. § 2254 Petition

On April 8, 2010, Jacob filed his present § 2254 Petition in the United States District Court, Eastern District of Virginia.[5] Jacob raises three grounds for relief in his § 2254 Petition, as summarized below:

Claim 1:     Petitioner was denied his Sixth Amendment right to effective assistance of counsel when defense counsel failed to investigate and present exculpatory evidence. Specifically, Petitioner alleges ineffective assistance of counsel in defense counsel's failure to:

> a. obtain DNA samples from Petitioner's wife and eldest son, have those samples tested and the resulting DNA profiles compared to the DNA profiles developed from the stains on the items in evidence, and present that evidence at trial; and,

> b. obtain independent expert witness testimony and impeach the Virginia Department of Forensic Science technician's testimony that the victim could not be eliminated as a contributor to the non-sperm stain on the bedspread.

Claim 2:     Petitioner's Fourteenth Amendment right to due process was violated in that the evidence adduced at trial was insufficient, as a matter of law, to sustain Petitioner's convictions for rape.

---

[5] The Court considers a prisoner's habeas corpus petition filed on the date he delivers his petition to prison authorities for mailing to the court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). Jacob has sworn under penalty of perjury that he placed his § 2254 Petition in the prison mailing system on April 8, 2010.

| Claim 3: | Petitioner's Fifth, Sixth, Thirteenth, and Fourteenth Amendment rights were violated in that the trial court denied the Petitioner's Motion for Bill of Particulars.[6] |
|---|---|

(§ 2254 Pet. 5-8; Pet'r's Mem. Supp. § 2254 Pet. 15.) Respondent filed a Motion to Dismiss, arguing that Claim 3 should be dismissed as unexhausted and procedurally defaulted and that Claims 1(a), 1(b), and 2 should be dismissed on the merits. As discussed below, the Court will DISMISS Claim 3 as unexhausted and procedurally defaulted and will DISMISS Jacob's remaining claims on the merits.

## II. Standard of Review

This Court's power to grant relief by way of a writ of habeas corpus is circumscribed by 28 U.S.C. §§ 2254(d) and 2254(e)(1). Under Section 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[6] Jacob does not fully explain all of the rights protected by the named amendments which he claims were violated by the Circuit Court's denial of his Motion for Bill of Particulars. Jacob, however, does assert that he was denied "the opportunity to give an adequate Notice of Alibi, to call relevant witnesses for his defense who could testify with more specificity, and to properly prepare for his case." (Pet'r's Mem. Supp. § 2254 Pet. 27.) He further contends the denial of his motion left him "unprotected from double jeopardy." (Pet'r's Mem. Supp. § 2254 Pet. 28.) Regardless, as discussed below, the Court finds this claim to be unexhausted and procedurally defaulted. *Infra* Part III.A.

28 U.S.C. § 2254(d). A decision is "contrary to" clearly established law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694 (2002) (*citing Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)). A decision is an "unreasonable application" of Supreme Court law "if the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." *Id.* at 694 (*citing Williams,* 529 U.S. at 407-08). Demonstrating that a state court's decision is unreasonable requires overcoming "a substantially higher threshold" than simply demonstrating error. *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007) (*citing Williams,* 529 U.S. at 410).[7] Additionally, "when assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned." *Larry v. Branker,* 552 F.3d 356, 365 (4th Cir. 2009) (alterations in original; internal quotations omitted).

### III. Analysis

**A.** **The Court Dismisses Claim 3 as Unexhausted and Procedurally Defaulted**

In Claim 3, Jacob alleges that his Fifth, Sixth, Thirteenth, and Fourteenth Amendment rights were violated when the Circuit Court denied his Motion for Bill of Particulars. As explained below, the Court will DISMISS Claim Three as unexhausted and procedurally defaulted.

---

[7] In light of the foregoing statutory structure, the findings of the Supreme Court of Virginia and the Circuit Court figure prominently in this Court's opinion.

### 1. Applicable Law for Exhaustion and Procedural Default

State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (*quoting Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n.10 (1973)). The purpose of the exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize "all available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). Under this aspect of exhaustion, a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."[8] 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (*quoting Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles must be presented to the state court.'" *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (*quoting Matthews*, 105

---

[8] Respondent concedes that Jacob has satisfied this aspect of the exhaustion requirement.

F.3d at 911). Thus, "the presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim." *Id.* (*citing Duncan*, 513 U.S. at 366); *see Gray v. Netherland*, 99 F.3d 158, 162-64 (4th Cir. 1996) (concluding petitioner had not fairly presented his legal argument to the state courts). The United States Court of Appeals for the Fourth Circuit summed up a petitioner's burden in this regard as follows:

> [T]he exhaustion requirement demands that the petitioner "do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick."

*Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (*quoting Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). Furthermore, a federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

## 2. Jacob Failed to Fairly Present Any Federal Constitutional Violation Alleged in Claim 3 to the Supreme Court of Virginia

Jacob did not "'fairly present'" to the Supreme Court of Virginia a claim that the denial of his Motion for Bill of Particulars constituted a denial of his Fifth, Sixth, Thirteenth, or Fourteenth Amendment rights. *See Baldwin*, 541 U.S. at 29 (*quoting Duncan*, 513 U.S. at 366). Before the Supreme Court of Virginia on direct appeal, Jacob instead contended that the Circuit Court's denial of his Motion for Bill of Particulars violated the Virginia Constitution and section 19.2-220 of the Virginia Code. The petition for appeal contained no indication that Jacob was asserting federal constitutional claims. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan*, 513 U.S. at 365-66. Further, Jacob's references to double jeopardy and the right to call witnesses on his own behalf under the Virginia Constitution were insufficient to raise similar federal claims. *See Baker*, 220 F.3d at 289 ("[T]he presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim."). Jacob thus failed to fairly present his federal constitutional claims under Claim 3 to the Supreme Court of Virginia.

## 3. Jacob's Federal Constitutional Claims Under Claim 3 Are Procedurally Defaulted

If Jacob were to attempt now to present these federal constitutional violations in Claim 3 to the Supreme Court of Virginia, that court would find the claim procedurally defaulted as time-barred pursuant to Va. Code § 8.01-654(A)(2)[9] and successive pursuant to Va. Code § 8.01-654

---

[9] This statute provides:

A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code § 8.01-654(A)(2).

(B)(2).[10]  Both Virginia's statute of limitations for habeas actions and successive petition bar are

adequate and independent procedural rules when so applied. *See George v. Angelone*, 100 F.3d

353, 363-64 (4th Cir. 1996); *Sparrow v. Dir. Dep't of Corr.*, 439 F. Supp. 2d 584, 587-88 (E.D.

Va. 2006).  Further, the Supreme Court of Virginia would find this claim procedurally barred

pursuant to *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), because it should have been, but

was not, raised on direct appeal to the Supreme Court of Virginia. *Slayton* is an adequate and

independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196-97

(4th Cir. 1997).  Thus, Jacob's Claim 3 is procedurally defaulted.

### 4.    Excuse for Procedural Default

Jacob presents no argument regarding cause that might excuse his procedural default.

Indeed, Jacob admits in his response to Respondent's Motion to Dismiss: "[A]fter review of the

record (including the State appellate briefs and rulings) the petitioner . . . concedes the

Respondent's assertion/assessment that . . . Claim 3 has not been properly exhausted." (Pet'r's

Opp'n Resp't's Mot. Dismiss 1.)  Thus, Jacob has failed to show cause that might excuse

Claim 3 from procedural default, and the Court will DISMISS Claim 3.

---

[10]  This statute provides in relevant part:

> Such petition shall contain all allegations the facts of which are known to petitioner
> at the time of filing and such petition shall enumerate all previous applications and
> their disposition. No writ shall be granted on the basis of any allegation the facts of
> which petitioner had knowledge at the time of filing any previous petition.

Va. Code § 8.01-654(B)(2).

**B.    The Court Dismisses Claim 2 on the Merits**

In Claim 2, Jacob complains that the evidence at trial was insufficient to support his

multiple convictions of rape because the Commonwealth failed to prove that an act of intercourse

occurred on eight separate occasions and that each act was accomplished by threat, force, or

intimidation.[11]  Specifically, Jacob argues:

> The Commonwealth simply cannot carry its burden of proof for multiple offenses by
> the use of generalized statement[s] and extrapolating that these generalized
> statements apply to[] [e]ach separate and distinct act. . . .  [The Circuit Court] erred
> by allowing the jury to consider more than one count of rape for each of the relevant
> time periods [in the indictments].

(Pet'r's Mem. Supp. § 2254 Pet. 26.)  Jacob raised this issue on direct appeal before the Court of

Appeals of Virginia and the Supreme Court of Virginia.  As discussed below, the Court finds the

evidence adduced at trial sufficient to support Jacob's eight convictions of rape.

### 1.    Applicable Law for Insufficiency of the Evidence Claims

A federal habeas petitioner is entitled to relief on a challenge to the sufficiency of the

evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Greene v. Johnson*, No. 3:10cv53, 2010

WL 5395057, at *6 (E.D. Va. Dec. 28, 2010).  The relevant question in conducting such a review

is whether, "after viewing the evidence in the light most favorable to the prosecution, *any*

rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson*, 443 U.S. at 319.  The critical inquiry on review of the sufficiency of the

---

[11]  In Claim 2, Jacob does not challenge the sufficiency of the evidence for his two
convictions for indecent liberties.  Indeed, at the sentencing hearing, Jacob admitted to fondling
his daughter's, the victim, breasts while masturbating.

evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. *Id.* at 318.

### 2. The Findings of the Court of Appeals of Virginia

The Court of Appeals of Virginia recounted the evidence against Jacob as follows:

[T]he evidence proved that the victim [Jacob's teenaged, biological daughter] testified [Jacob] sexually assaulted her every Saturday, but he started to "slow down" between January 1, 2004 and the end of May 2004, but he sexually assaulted her more than five times during this time period. The victim testified [Jacob] sexually assaulted her more than five times and probably more than ten times between January 1, 2006 and May 25, 2006. The victim testified she initially resisted [Jacob], but he would get angry and she was afraid of him when he was angry. The victim testified [Jacob] frequently was drinking when he abused her and he got angry when he was drinking. The victim testified [Jacob] was stronger and she could not say no when he abused her.

*Jacob v. Commonwealth*, No. 0951-07-4, at 2-3 (Va. Ct. App. Oct. 30, 2007).[12] Based on this evidence, the Court of Appeals of Virginia analyzed whether there was sufficient evidence to prove beyond a reasonable doubt that Jacob was guilty of eight counts of rape.

The Court of Appeals first restated the elements of the crime of rape: "'If any person has sexual intercourse with a complaining witness . . . and such act is accomplished . . . against the complaining witness's will, by force, threat or intimidation of or against the complaining witness . . . he or she shall be guilty of rape.'" *Id.* at 3 (*quoting* Va. Code 18.2-61) (first and third omissions in original). The Court of Appeals then explained:

"Intimidation requires putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will. Intimidation may be caused by the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure. This fear of bodily harm must derive from some conduct or statement of the accused."

---

[12] Because Jacob has not rebutted these factual findings by clear and convincing evidence, they are presumed correct. *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (*citing* 28 U.S.C. § 2254(e)(1)).

*Id. (quoting Cairns v. Commonwealth*, 579 S.E.2d 340, 351 (Va. Ct. App. 2003). The relative

size of the defendant compared to the victim, any familial relationship between the defendant and

the victim, the victim's age, and the vulnerability of the victim are all relevant factors to consider

when determining whether the victim was placed in fear of bodily harm. *Id. (citing*

*Commonwealth v. Bower*, 563 S.E.2d 736, 738 (Va. 2002)). The Court of Appeals held that

"[t]here was sufficient evidence supporting the jury's determination that [Jacob] sexually

assaulted the victim on eight different occasions and the assaults were accomplished through

force, threat or intimidation. The Commonwealth's evidence was competent, was not inherently

incredible, and was sufficient to prove beyond a reasonable doubt that [Jacob] was guilty of eight

counts of rape . . . ." *Id.* at 3-4.

Jacob does not suggest that this finding "was contrary to, or involved an unreasonable

application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Thus, the Court will

determine whether this finding resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding. 28

U.S.C. § 2254(d)(2).

### 3.    The Relevant Evidence Adduced at Trial[13]

To prove its case-in-chief, the Commonwealth relied largely on testimony from the

victim, Jacob's biological daughter. Two recorded phone conversations between the victim and

---

[13] As stated above, Jacob's challenge to the sufficiency of the evidence is limited to
whether the Commonwealth proved eight distinct acts of sexual intercourse, each accomplished
by threat, force, or intimidation. The Court recites only evidence that tends to prove or disprove
these elements of rape.

Jacob confirmed the victim's testimony.[14] DNA evidence before the jury also corroborated the victim's testimony to some degree.

The victim, who was seventeen at the time of the trial, testified that between January 1, 2004 and May 25, 2004, she was about fourteen years old. She testified that during that time period her father, Jacob, made sexual statements to her, touched her breasts, and had sexual intercourse with her by putting his penis in her vagina. She stated that the sexual abuse usually occurred on Saturdays when her mother was at work, her father was drinking, and she was home alone with her father. While the victim could not clearly remember the first few times the sexual intercourse occurred, she testified that, between January 1, 2004 and May 25, 2004, Jacob had sexual intercourse with her more than five times and touched her breasts at least five times. The victim stated that she did not want to have sexual intercourse with her father and that at first she tried to ignore him and then tried to resist him. She tried to push him off with her knees, "but he just kept coming back" and would eventually force sexual intercourse. (Nov. 14, 2006 Tr. 386:6-21.) The victim stated that she was afraid of her father and his getting angry if she did not do as he wanted. She felt that she "couldn't really say no" because he was stronger (Nov. 14, 2006 Tr. 380:21-23), that she "had nowhere to go" (Nov. 14, 2006 Tr. 385:15), and that she "couldn't resist him because . . . he was usually drunk at that time" (Nov. 14, 2006 Tr. 385:17-18). The

---

[14] A transcript of two phone calls between the victim and Jacob recorded by the Loudoun County Sheriff's Department appears in the record. (Pet'r's Mem. Supp. § 2254 Pet. Ex. 1.) During those conversations, the victim informed Jacob, her "daddy," that she was pregnant and asked him why he did not wear a condom. Rather than denying the conduct, Jacob told his daughter not to speak on the phone about it, expressed concern about others hearing their conversation, instructed her not to tell anyone, talked about the possibility of his daughter going to jail, and suggested, in a manner that did not imply prenatal care would result, that going to the hospital might be an option. These responses evince consciousness of guilt.

victim testified that when her father was intoxicated he was different, had more control over the family, was rude, and got his way.

The victim testified that between January 1, 2006 and May 25, 2006 she was sixteen years old and that Jacob had sexual intercourse with her every Saturday or every other Saturday. She stated that, during this time frame, he touched her breasts and put his penis in her vagina on more than five occasions. The victim testified that during those occasions she did not want to have sexual intercourse with her father and that she tried to resist him by shoving him away and asking him to stop.

In his defense, Jacob presented numerous witnesses, including Jacob's two sons, that testified that they were with Jacob at various times on various Saturdays between January 1, 2004 and May 25, 2004 and between January 1, 2006 and May 25, 2006. However, none of these witnesses could provide specific times or dates.

The defense also called Jacob's wife and eldest son to testify on his behalf. Through their testimony, Jacob attempted to undermine the credibility of his daughter's testimony by asserting that his daughter was jealous of Jacob's favorable treatment toward his eldest son and often complained of Jacob's strict parenting style.[15] During closing argument, trial counsel pointed to this testimony when arguing a motive for the victim to concoct this story against Jacob.

Based on this evidence presented at trial, the Court finds the Court of Appeals of Virginia's holding was not based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Viewing the evidence in the light most favorable to the prosecution, any rational trier

---

[15] The defense also called Jacob's wife in an attempt to explain and refute the DNA evidence and its seeming corroboration of the victim's testimony. This testimony and evidence is relevant to Claim 1(a) and is outlined below. *Infra* Part III.C.2.a.

of fact could have found beyond a reasonable doubt the essential elements of five separate and distinct counts of rape between January 1, 2004 and May 25, 2004, as well as three separate and distinct counts of rape between January 1, 2006 and May 25, 2006. *Jackson*, 443 U.S. at 319. The evidence demonstrates that Jacob had sexual intercourse with the victim, his daughter, at least five times between January 1, 2004 and May 25, 2004 and at least three times between January 1, 2006 and May 25, 2006. Considering the victim's age, the father-daughter relationship, the relative size of the victim as compared to Jacob, the victim's vulnerability, the victim's futile attempts at resistance, and the victim's fear of her drunk father, a rational trier of fact could have found beyond a reasonable doubt that Jacob accomplished each instance of sexual intercourse by force, threat, or intimidation. Accordingly, Claim 2 will be DISMISSED.

### C. The Court Dismisses Claim 1 on the Merits

In Claim 1, Jacob asserts two ineffective assistance of counsel claims. As discussed below, the Court finds Claim 1 to be without merit.

#### 1. Applicable Law for Ineffective Assistance of Counsel Claims

To prove a constitutional claim for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation was deficient and that actual prejudice stemmed from the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Proving deficient representation "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* That is, a petitioner must show that counsel's performance at trial "'fell below an objective standard of reasonableness' based on the situation at the time rather than on hindsight." *Buckner v. Polk*, 453 F.3d 195, 201 (4th Cir. 2006) (*quoting Strickland*, 466 U.S. at 688-90). Proving prejudice

"requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Put differently, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to "determine whether counsel's performance was deficient before examining the prejudice" issue. *Id.* at 697.

### 2. Claim 1(a): Jacob Fails to Show Prejudice Caused by Counsel's Failure to Obtain DNA Samples from Jacob's Wife and Eldest Son

Jacob asserts in Claim 1(a) that trial counsel was ineffective in her failure to obtain DNA samples from Jacob's wife and son for comparison to the DNA profiles developed from testing of the Commonwealth's evidence. Jacob raised this claim in the Supreme Court of Virginia during state habeas corpus proceedings. The Supreme Court of Virginia dismissed the claim, reasoning as follows:

> The Court holds that [this claim] fails to satisfy the 'prejudice' prong of the two-part test enunciated in [*Strickland*]. The record . . . demonstrates that the victim testified at trial that [Jacob] had sexual intercourse with her on the living room floor and on her bed. [Jacob's] wife also testified that she had engaged in sexual intercourse with [Jacob] in the victim's bedroom and on the living room rug. [Jacob] fails to articulate how obtaining DNA result[s] to verify that he and his wife had also engaged in sex acts in the location where the offenses occurred, or that his son's DNA was also present where one of the offenses occurred, would have undermined the evidence corroborating the victim's account. Thus, [Jacob] has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Jacob v. Dir. of the Dep't of Corr.*, No. 373328, at 2 (Va. Feb. 8, 2010).

This Court agrees Jacob fails to show prejudice stemming from trial counsel's failure to obtain DNA samples from Jacob's wife and son. As discussed earlier, the Commonwealth

largely relied on the victim's testimony to prove Jacob's guilt. *Supra* Part III.B.3. The victim's testimony persuades, especially given the two recorded telephone conversations that confirm the victim's version of events. *See supra* n.14.

### a. The Relevant DNA Evidence Presented at Trial

While the DNA evidence slightly corroborated the victim's testimony, the DNA analysis *by itself* did not exclude reasonable theories of innocence. A review of the record shows that this case did not turn on DNA analysis, and that Jacob cannot show prejudice in his trial counsel's failure to develop a DNA profile for Jacob's wife and eldest son.

At trial, the Commonwealth presented testimony from Nathan Himes, a forensic scientist with the Virginia Department of Forensic Science. Himes explained that he looks at fifteen different loci, each containing two alleles, to develop a DNA profile. Himes developed DNA profiles from a mixture stain found on a bedspread taken from the victim's bed. The mixture stain consisted of a sperm fraction and a non-sperm fraction, and Himes developed a DNA profile for each fraction. Jacob could not be eliminated as a contributor to the sperm fraction.

As to the non-sperm fraction, Himes testified that the testing was inconclusive at multiple loci due to the weak concentration of DNA. He testified: "In this instance, in the non-sperm fraction, we did not recover much DNA, and therefore, there is resulting in what's called dropout. Where it's inconclusive or certain areas aren't quite showing up, not all the information that may be there is showing up." (Nov. 15, 2006 Tr. 687:23-688-3.) Himes, however, developed a DNA profile from the non-sperm fraction and could not eliminate Jacob or the victim as contributors to the non-sperm fraction. He further explained:

18

> In lower-level DNA samples, this is not uncommon to have what we call a dropout where some loci are not coming up with conclusive results. So in this instance the DNA that's in the non-sperm fraction could be from anything.
>
> It could be from just simply it was [the victim's] bed and she slept in it.

(Nov. 15, 2006 Tr. 634:19-25.) The non-sperm fraction of the stain could be from skin cells, saliva, or sweat. Himes admitted that there could be additional, undetected alleles in the non-sperm fraction of the stain. He also admitted that it is a possibility that Jacob's wife could have contributed to the non-sperm fraction of the stain. Himes testified that "it certainly is a possibility that [Jacob's wife's] sample is in there." (Nov. 15, 2006 Tr. 691:22-23.) Prompted by defense counsel on cross-examination, Himes also developed a partial DNA profile consisting of obligate alleles for Jacob's wife, allowing the jury to compare similarities between the non-sperm fraction DNA profile and these obligate alleles.

Himes developed DNA profiles for nine spermatozoa stains on the living room carpet. Himes eliminated Jacob as a contributor from six of the nine stains, but could not eliminate Jacob as a contributor to two of the remaining stains, as well as the third mixture stain. Himes developed the same DNA profile for the six stains from which Jacob could be eliminated, and based on the DNA profile, Himes admitted that one could assume that either Jacob's father or Jacob's son could not be eliminated as a contributor to those six stains.

Himes testified that defense counsel did not submit any DNA samples from Jacob's wife or his sons and that he would have tested and made comparisons if he had received those DNA samples. Himes, however, also testified that he specifically requested in a report addressed to the police that DNA samples from the entire household be submitted for comparison.

19

During the course of the trial, Jacob's wife also testified that she and Jacob had sexual intercourse multiple times a week and that it was normal for them to engage in sexual intercourse in their bedroom, in the living room on the floor, and even in the victim's bedroom.

### b.    Jacob's Arguments as to Prejudice

Jacob argues that the subsequent DNA testing of his wife and eldest son show that his wife cannot be eliminated as a contributor to the non-sperm fraction of the stain on the victim's bedspread, and his son cannot be eliminated as a contributor to the six stains on the living room carpet.[16] He contends that "there is a reasonable probability this additional exculpatory DNA evidence would have amounted to reasonable doubt in the minds of the jury as it would have demonstrated that plausible theories of innocence as well as possible guilt existed." (Pet'r's Mem. Supp. § 2254 Pet. 22.) He asserts that "[t]his potential evidence would have also eliminated the perception that the DNA only corroborated [the victim's] allegations." (Pet'r's Opp'n Resp't's Mot. Dismiss 14.) Jacob further attempts to show prejudice by alleging that trial counsel promised the jury that she would demonstrate that the DNA mixture on the victim's bed

---

[16] The Court notes that Jacob has failed to include an affidavit from any DNA expert that explains the relevance of the DNA profiles developed for Jacob's wife and son or whether Jacob's wife or son could or could not be eliminated as contributors to the contested stains. Instead, Jacob simply makes the conclusory statement that "the DNA testing performed with regard to [his] wife shows that it is just as, if not more likely that the stained area . . . on the bedspread was in fact a mixture of [Jacob's] DNA and that of his wife's, not [the victim's]." (Pet'r's Mem. Supp. § 2254 Pet. 21.) Further, Jacob states that "[w]hen this Court conducts an evidentiary hearing, [he] will present expert witness testimony from Dr. Michael W. Schmiederer, Ph.D., Director, LabCorp, the company that performed the independent DNA testing on [Jacob's] wife, son, and daughter." (Pet'r's Opp'n Resp't's Mot. Dismiss 17.) For purposes of resolving this claim, the Court assumes that the DNA profiles for Jacob's wife and son would show that Jacob's wife could not be eliminated as a contributor to the non-sperm stain on the victim's bedspread and that Jacob's son could not be eliminated as a contributor to the six sperm stains on the living room carpet. Even given this assumption, Jacob has failed to show prejudice.

"was actually a mixture consistent with [Jacob] and his wife, and not [Jacob] and [the victim]."

(Pet'r's Mem. Supp. § 2254 Pet. 9 n.1).[17] The Court, however, finds that no prejudice resulted

from trial counsel's failure to provide DNA samples of Jacob's wife and son for comparison.[18]

### c. Jacob Fails to Satisfy the *Strickland* Prejudice Prong

The Court finds that no prejudice resulted from trial counsel's opening statements and the

failure to provide DNA samples of Jacob's wife and son. During her opening statement, Jacob's

trial counsel stated:

> What you are going to hear on the witness stand . . . from the DNA expert from the
> lab is that, in fact, that mixture is actually consistent with a mixture between Mr.
> Jacob and his wife. And in fact, you are going to hear evidence that will lead you to
> believe that that mixture is more consistent with Mr. Jacob and his wife than it is
> with Mr. Jacob and his daughter.

(Nov. 14, 2006 Tr. 350:5-12.) She further stated: "You are going to hear that that [six semen

stains on the rug are] actually consistent with probably one of Mr. Jacob's sons." (Nov. 14, 2006

Tr. 351:7-9, 16.)

---

[17] Respondent suggests that the Court should construe Jacob's argument regarding trial
counsel's promises as a new claim. The Court, however, declines to treat this argument as a new
claim and instead finds that Jacob merely attempts to satisfy the two-prong *Strickland* test by
pointing to the alleged failure of trial counsel to keep her promise.

[18] Citing *Williams v. Taylor*, 529 U.S. 362 (2000), Jacob argues that, when determining
whether the *Strickland* prejudice prong has been satisfied, this Court must consider the
cumulative effect of attorney error in failing to present DNA evidence from his wife and son and
in failing to obtain an independent expert witness. However, the Fourth Circuit has held "that it
is not appropriate to consider the cumulative effect of attorney error when the individual claims
of ineffective assistance do not violate the defendant's constitutional rights." *United States v.
Russell*, 34 F. App'x 927, 927 (4th Cir. 2002) (*citing Fisher v. Angelone*, 163 F.3d 835, 852 (4th
Cir. 1998)). Because the Court finds that counsel was not constitutionally deficient in failing to
obtain an independent expert witness, *infra* Part III.C.3, this Court need not consider the
cumulative effect of Jacob's attorney's alleged error.

By calling Jacob's wife, sons, and other witnesses in his defense, through cross-examination, and via other means, Jacob's trial counsel established a record from which she could argue points during closing consistent with her "promises" in her opening statement, and she did so. As outlined above, Jacob's trial counsel repeatedly pointed out the weaknesses of the DNA evidence. The non-sperm stain on the victim's bedspread consisted of a weak mixture where DNA testing was inconclusive at several loci. Himes admitted that alleles could be present that were undetected, and Himes readily admitted that the non-sperm stain could have come from skin cells, sweat, saliva, or other nonsexual sources.

Jacob's wife testified that she and her husband had sexual intercourse in the places where Jacob's sperm was found, and Himes admitted that it was possible that the non-sperm stain contained DNA from Jacob's wife. He also developed a partial DNA profile for the victim's mother consisting of obligate alleles. This partial DNA profile was largely consistent with the DNA profile for the non-sperm fraction of the stain on the victim's bedspread. In closing arguments, trial counsel also pointed out various alleles in the non-sperm stain on the victim's bedspread that matched neither Jacob's nor the victim's DNA profile, arguing that those alleles must have come from Jacob's wife.

As for the stains on the living room carpet, Himes testified that the six semen stains on the living room carpet likely came from either Jacob's father or son. Himes also testified that he specifically requested that the police provide DNA samples for the rest of Jacob's family, but the request was ignored. The Court finds that Jacob's trial counsel, via examination of witnesses, aptly highlighted information regarding her "promises" made during opening statement, and

22

Jacob cannot show prejudice from trial counsel's failure to present DNA profiles for Jacob's wife and son.

This is particularly true because this case did not turn on DNA evidence, but instead was based largely on the credibility of the victim's testimony, and the confirming recorded telephone conversations. Jacob has utterly failed to show how DNA evidence that Jacob's son could not be eliminated as a contributor to the six stains on the living room carpet would have changed the result of the proceedings. Further, he has failed to show a reasonable probability that DNA evidence showing Jacob's wife could not be eliminated as a contributor to the stain on the victim's bedspread would have changed the result of the proceedings. The Court will thus DISMISS Claim 1(a) on the merits.

### 3. Claim 1(b): Jacob Fails to Show Deficient Performance or Prejudice Caused by Counsel's Failure to Obtain an Independent Expert Witness to Impeach Himes's Testimony

Jacob asserts in Claim 1(b) that trial counsel was ineffective in her failure to obtain an independent expert witness to impeach Himes's testimony. Jacob raised this claim in the Supreme Court of Virginia during state habeas corpus proceedings. The Supreme Court of Virginia dismissed the claim, reasoning as follows:

> The Court holds that [this claim] satisfies neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript and affidavit of counsel, demonstrates that counsel did not feel it would be necessary or beneficial to obtain an independent expert to challenge the Commonwealth's expert's conclusion that the victim was a contributor to the sample because there were other, non-sexual explanations for the existence of the victim's DNA since she lived in the house. [Jacob] has also failed to submit an affidavit from any expert who would have testified that the Commonwealth's expert's testimony was unreliable. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

*Jacob v. Dir. of the Dep't of Corr.*, No. 373328, at 2-3 (Va. Feb. 8, 2010). The Court agrees that Jacob has failed to satisfy *Strickland*'s constitutional deficiency prong and prejudice prong.

In his state habeas petition, Jacob failed to identify an expert witness that his trial counsel should have called and failed to proffer what testimony would have been elicited. In the present petition, Jacob merely alleges that an independent expert witness would have impeached Himes's testimony that the victim could not be eliminated as a contributor to the non-sperm stain on the victim's bedspread. Jacob argues:

> Himes testified that in analysis, in an attempt to eliminate a subject as a contributor to an item of evidence, he looks at fifteen (15) 'loci;' . . . if fourteen out [of] the fifteen loci match, a subject is said to be unable to be eliminated. However, according to the Certificate of Analysis produced by the Virginia Department of Forensic Science related to the bedspread taken off [the victim's] bed, [the victim] had matching alle[le]s at only ten (10) of the fifteen (15) loci that Hime[s]'s would have looked at for the purpose of analysis.

(Pet'r's Mem. Supp. § 2254 Pet. 18 (internal citations omitted).) Jacob makes the conclusory allegation that "it is simply scientifically unsound to draw a conclusion that [the victim] could not be eliminated as a contributor. The Virginia Department of Forensic Science's conclusions with regard to the DNA evidence should have lead [sic] trial counsel to obtain independent expert witness testimony." (Pet'r's Mem. Supp. § 2254 Pet. 19.)

First, the Court notes that Jacob mischaracterizes Himes's testimony. Himes did not testify that fourteen out of fifteen loci must match to determine that a subject cannot be eliminated as a contributor. In fact, he testified that, for *two known samples*, if only fourteen out of fifteen loci matched, the subject would be eliminated as a possible contributor. However,

Himes testified that for *mixture samples*, the number of loci that must match depends on various factors:

> Q.    If a person has 14 out of 15 loci matching, but the 15th is not, they would be excluded [as] a contributor to that sample, correct?
>
> A.    Depending on a number of factors, if it were a mixture. There is a lot to be considered. You would have to actually physically look at the profile.
>
> But two known samples, essentially, just for an example. Say, if you were comparing two known samples and they matched at 14 out of 15 and that 15 was different, no. They would not be considered–they would be eliminated from one another.

(Nov. 15, 2006 Tr. 653:17-654:4.)

Second, Jacob has failed to identify an expert witness that his trial counsel should have called and has failed to provide an affidavit from any expert witness stating that they would have provided testimony negating Himes's testimony. Jacob instead makes the conclusory allegation that Himes's conclusion was scientifically unsound and states that this Court should hold an evidentiary hearing "at which time [Jacob] will proffer expert testimony concerning the DNA evidence in this case and the unreliability of the Commonwealth's expert's conclusions." (Pet'r's Opp'n Resp't's Mot. Dismiss 21.)

Given that Jacob fails to specify any aspect of the DNA evidence he would hope to proffer, "[i]t would be pure speculation to say that a defense expert would have found" Himes's testimony to be scientifically unsound. *Potts v. Hinkle*, No. 7:06cv524, 2007 WL 1577337, at *5 (W.D. Va. May 31, 2007). Allegations of ineffective assistance, absent a specific proffer as to what favorable evidence or information would have been produced had counsel performed adequately, do not provide a basis for habeas relief. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) (*citing Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990)).

Jacob has not presented sufficient evidence to show that his trial counsel was constitutionally defective in her failure to obtain an independent expert witness to impeach Himes's testimony and has failed to show a reasonable probability that an independent expert would have changed the outcome of his trial. *See Beaver*, 93 F.3d at 1195 ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); *Yarbrough v. Johnson*, 490 F. Supp. 2d 694, 738 (E.D. Va. 2007) ("[P]etitioner's failure to articulate identifiable deficiencies with the prosecution's forensic evidence or testing protocol prevents him from establishing a '*reasonable probability* that, but for counsel's unprofessional conduct, the result of the proceedings would have been different.'" (*citing Strickland*, 466 U.S. at 694)).

Finally, even assuming Jacob could present an expert to impeach Himes's testimony that the victim could not be excluded as a contributor to the non-sperm stain on her bedspread, this Court would still find that Jacob has failed to satisfy the prejudice prong of *Strickland*. As previously discussed, this case did not turn on DNA evidence, but on the credibility of the victim's testimony. The record before the jury contains nonsexual reasons why the victim's DNA could be present on the bedspread, as well as non-criminal reasons why Jacob's sperm could be present on the victim's bedspread. Jacob has failed to demonstrate a reasonable probability that expert testimony undermining Himes's opinion would cause the jury to question the credibility of the victim's testimony, as corroborated by the recorded telephone conversations. Because Jacob fails to establish a reasonable probability of a different outcome under these assertions, the Court will DISMISS Claim 1(b) on the merits.

## IV. The Court Denies Jacob's Motion for an Evidentiary Hearing

Jacob incorporates a motion for an evidentiary hearing within his Opposition to Respondent's Motion to Dismiss. (Docket No. 16.) Section 2254(e)(2) limits this Court's authority to grant an evidentiary hearing for a petitioner who "has failed to develop the factual basis" supporting a claim in state court unless the petitioner shows that:

(A) the claim relies on–

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).[19]

---

[19] District courts apply a different test if the petitioner has diligently pursued the development of his claim in state court. A federal court may grant an evidentiary hearing to a petitioner who has diligently pursued his habeas corpus claim in state court where:

(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Townsend v. Sain*, 372 U.S. 293, 313 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992); *see Conaway v. Polk*, 453 F.3d 567, 582 (4th Cir. 2006). "A petitioner has not 'failed to develop' the facts of his claim [under § 2254(e)(2)] if he has 'made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.'" *Conaway*, 453 F.3d at 589 (*quoting Williams v. Taylor*, 529 U.S. 420, 435 (2000)).

This Court finds that Jacob failed to develop the factual basis of his claim in state court proceedings. *Swann v. Taylor*, No. 98-20, 1999 WL 92435, at *8 (4th Cir. Feb. 18, 1999). Further, this Court has "no basis upon which to conclude that the state courts of Virginia denied [Jacob] the opportunity to offer [expert affidavits] or otherwise develop the factual basis of his claim." *Id.* While Jacob moved for an evidentiary hearing in state court, he failed to submit or even attempt to submit an affidavit from any expert to support his conclusory allegations. *See Williams v. Angelone*, No. 98-28, 1999 WL 249026, at *3 (4th Cir. Apr. 28, 1999). Nothing extrinsic to his own conduct prevented him from submitting an affidavit from an expert in state court. Because Jacob has presented no new rule of constitutional law or factual predicate that could not previously have been discovered through the exercise of due diligence, the Court finds that he is not entitled to an evidentiary hearing under 28 U.S.C. § 2254(e)(2).

Even if § 2254(e)(2) did not prohibit an evidentiary hearing, "an evidentiary hearing would be permitted only if [the petitioner] has 'allege[d] additional facts that, if true, would entitle him to relief' on his claim." *Swann*, 1999 WL 92435, at *8 (*quoting Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998), *overruled on other grounds by Bell v. Jarvis*, 236 F.3d 149 (4th Cir. 2000) (second alteration in original)). As discussed above, Jacob cannot demonstrate prejudice, and thus, he cannot show that these additional facts would entitle him to relief on his claim. *Supra* Part III.C.2.c, III.C.3. Jacob simply fails to plausibly suggest that, even with expert testimony, a reasonable probability of a different result exists. Thus, the Court will DENY Jacob's Motion for an Evidentiary Hearing. (Docket No. 16.)

## V.  Certificate of Appealability

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Jacob is entitled to further consideration in this matter. A certificate of appealability is therefore DENIED.

## VI.  Conclusion

For the foregoing reasons, the Court finds the claims presented in Jacob's § 2254 Petition to be either unexhausted and procedurally defaulted or without merit. Thus, Respondent's Motion to Dismiss (Docket No. 9) will be GRANTED, Jacob's § 2254 Petition (Docket No. 1) will be DISMISSED, and Jacob's Motion for an Evidentiary Hearing (Docket No. 16) will be DENIED. A COA will be DENIED.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: March 28, 2011

29